IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Randy Elders, | ) | Case No. 8:14-cv-4916-RBH-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden of Broad River Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 13.] Petitioner, who filed his petition pro se but is now proceeding with counsel, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on December 31, 2014.[1] [Doc. 1.] On March 31, 2015, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 13, 14.] On April 1, 2015, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 15.] Petitioner's counsel entered a notice of appearance on May 6,

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988); in this case, the Petition was hand-delivered to this Court on December 31, 2014. It was also dated and signed by Petitioner on December 31, 2014. [Doc. 1 at 1, 35].

2015. [Doc. 17.]  On August 7, 2015, counsel filed a response in opposition on Petitioner's behalf.  [Doc. 24.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Richland County.  [Doc. 1 at 1.]  Petitioner was indicted in June 2005 for carjacking, armed robbery, two counts of kidnapping, and two counts of assault and battery with intent to kill.  [App. 654–71.[2]]  On February 13–17, 2006, represented by April W. Sampson ("Sampson") and Stacy R. Owings ("Owings," collectively "trial counsel"),[3] Petitioner pled guilty to carjacking and one count of assault and battery with intent to kill and proceeded to trial on the remaining charges.  [App. 1–463.]  At the conclusion of the trial, the jury returned a verdict of guilty on the charges of armed robbery, kidnapping, and the lesser included offense of assault and battery of a high and aggravated nature.  [App. 457–58.]  Petitioner was sentenced to twenty years imprisonment on the carjacking conviction, fifteen years on the assault and battery with intent to kill conviction, thirty years on the armed robbery conviction, thirty years on each kidnapping conviction, and ten years on the Assault and battery of a high and aggravated nature conviction.  [App. 461–62,

_____

[2]The Appendix can be found at Docket Entry Numbers 14-9 through 14-12.

[3]Owings's last name changed to Rowell between the time of Petitioner's trial and the time of the PCR proceeding; she is sometimes referred to as Rowell in the state court record.

2

654–71; Doc. 1 at 1.]  All sentences were set to run concurrently except for the assault and battery with intent to kill sentence, which was set to run consecutively to the carjacking sentence.  [App. 654–71.]

**Direct Appeal**

Petitioner appealed his conviction. Robert W. Mills ("Mills") filed a brief on Petitioner's behalf, dated February 9, 2009, in the South Carolina Court of Appeals, raising the following issues:

> 1. DID THE TRIAL COURT ERR BY FAILING TO DIRECT A VERDICT ON THE CHARGE OF KIDNAPPING SINCE THE OFFENSE OF CARJACKING INCLUDES THE OFFENSE OF KIDNAPPING?
>
> 2. DID THE TRIAL COURT ERR BY ALLOWING INFLAMMATORY PHOTOGRAPHS INTO EVIDENCE?
>
> 3. DID THE TRIAL COURT ERR BY ALLOWING SEVERAL IRRELEVANT KNIVES INTO EVIDENCE?

[Doc. 14-1 at 4.]  On January 28, 2010, the South Carolina Court of Appeals issued an opinion affirming Petitioner's convictions.  [Doc. 14-3.]  Remittitur was issued on February 17, 2010. [Doc. 14-4.]

**PCR Proceedings**

***First PCR Application***

While his direct appeal was pending, Petitioner filed a pro se application for post-conviction relief ("PCR"), dated August 10, 2006,  pertaining to the two charges he had pled guilty to.  [App. 464–69.] In his PCR application, Petitioner asserted he was being held in custody unlawfully based on the following grounds:

> (a) Ineffective Assistance of Counsel;

3

       (b)     Violation Due Process of Law;

       (c)     Denied of Right to Appeal All Cases.

[App. 465.]  Petitioner provided the following support for those grounds:

       (a)     Counsel failed to conduct a thorough investigation on my case; failed to advise me of U.S. Const. Rights; counsel

       (b)     failed to contact witnesses; 2.) Defected Process of Criminal Arrest Warrants, Indictments, SCRCrim Pro.

       (c)     Rule 3(a), (b), (c). 3.) Petitioner advised counsel to appeal all cases, counsel failed to do so.

[App. 466.]

### Second PCR Application

On December 17, 2010, Petitioner, through Mills, filed a second application for PCR, alleging he was being held in custody unlawfully based on the ground of "Ineffective Assistance of Council [sic]," explaining "Council [sic] failed to adequately inform the Applicant of the applicable law relating to all of his charges, [and] Failure to investigate[.]" [App. 483–84.]  The State filed a return and motion to withdraw proposed order of dismissal, dated January 5, 2010.  [App. 325–29.]

A hearing was held on May 24, 2012, at which Petitioner was represented by Tristan M. Shaffer.  [App. 502–636.]  An order denying and dismissing both PCR applications was filed by the PCR court on November 19, 2012.  [App. 637–53.]

Petitioner appealed.  Carmen V. Ganjehsani of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari, dated October 16, 2013, in the Supreme Court of South Carolina asserting the following issues:

4

I.    Trial counsel provided ineffective assistance of counsel to Petitioner where trial counsel advised Petitioner to proceed under the invalid trial strategy of pleading guilty to (1) carjacking and (2) assault and battery with intent to kill of Dwight Riggs where Petitioner in essence admitted to many of the underlying facts needed by the State to prove to a jury that Petitioner was also guilty of (1) two counts of kidnapping; (2) armed robbery; and (3) assault and battery with intent to kill of Kathryn Riggs. In addition, in sentencing Petitioner after a full trial of the case to the counts to which he pled guilty, the trial judge gathered a fuller appreciation of the nature and extent of the crimes charged than he would have during a plea hearing thus leading to a harsher sentence for Petitioner for these two counts.

II.    Trial counsel provided ineffective assistance of counsel by failing to object to the solicitor's closing argument when the solicitor's comments impermissibly appealed to the passions of the jurors, impugned defense counsel, and asserted that Petitioner was fabricating a defense and so infected the trial with unfairness as to make the resulting conviction a denial of due process.

[Doc. 14-5 at 3.] The State filed a return on March 4, 2014. [Doc. 14-6.]

The Supreme Court of South Carolina denied the petition on December 4, 2014

[Doc. 14-7] and remitted the matter to the lower court on December 22, 2014 [Doc. 14-8].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the instant Petition on December 31, 2014.

[Doc. 1.]    In his Petition, Petitioner raises the following grounds for relief, quoted

substantially verbatim:

**Ground One**:    Trial Counsel was ineffective for advising petitioner to proceed under the invalid trial Strategy of pleading guilty to (1) Carjacking and (2) Assault and Battery with intent to kill of D.R. where petitioner in essence admitted to many of the underlying facts needed by the State to prove to the jury that petitioner was also guilty of

5

(1) two counts of kidnapping; and (2) armed-robbery; and (3) assault and battery with intent to kill K.R. In addition, in sentencing petitioner after a full trial of the case to the counts to which he plead guilty, the Trial Court gathered a fuller Appreciation of the nature and extent of the crimes charged the he would have during a plea hearing thus, leading to a harsher sentence for petitioner for these two Counts.    In which violated the applicant's Constitutional Rights to Legal procedural due process under the fourteenth Amendment of the United States Constitution.    And violated the petitioners 6th amendment to effective assistance of Counsel.

**Ground Two**:    Trial Counsel provided ineffective Assistance by failing to object to Solicitor's closing argument when the Solicitor's comments impermissibly appealed to the passions of the jurors; impugned defense counsel, and asserted that petitioner was fabricating a defense and so infected the trial with Fundamental Unfairness as to make the resulting conviction a denial of due process.

**Ground Three**:    PCR Counsel provided inadequate assistance of counsel at initial-review collateral proceedings for failing to file for a Rule 59(e) SCRCiv. P. In order to prevent the vital issues from being procedurally defaulted and in order to amend or alter the courts ruling of proving the constitutional violations and deprivations that would have reversed the petitioners case.

[Doc. 1.[4]]

As stated, on March 31, 2015, Respondent filed a motion for summary judgment.

[Doc. 13.]  On August 7, 2015, Mills filed a response in opposition on Petitioner's behalf.

[Doc. 24.]  Accordingly, Respondent's motion is ripe for review.

---

[4]Petitioner submits several hand-written pages in support of his grounds for relief. [Doc. 1 at 7, 9–17, 19, 21–23, 25–29.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

7

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

8

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>    (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>    (B)    (I) there is an absence of available State corrective process; or
>
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme

Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause

13

and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.*

14

at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Non-Cognizable Claim**

In Ground Three, Petitioner raises claims of ineffective assistance of PCR counsel. [Doc. 1 at 23–29.]  However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(I); *see also Martinez v. Ryan*,—U.S.—, 132 S.Ct. 1309, 1315, 1320 (2012) (stating that, "while § 2254(I) precludes [a petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause'").  Accordingly,

15

Petitioner is not entitled to federal habeas relief as to Ground Three because it is not a cognizable federal habeas claim.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

16

those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[6]  *Richter*, 562 U.S. at 101.  "A state court must be granted a deference and

---

[6]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The Supreme Court further explained,

17

latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").   Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.   *Id.*

---

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.   For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.   This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."   *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59–60.

***Ground One***

In Ground One, Petitioner argues trial counsel were ineffective for advising Petitioner to plead guilty to carjacking and to one count of assault and battery with intent to kill while advising Petitioner to proceed to trial on the remaining charges. [Doc. 1 at 7–17.] Petitioner contends that by pleading guilty he essentially admitted to the facts of the remaining charges, thereby eliminating the State's burden of proving Petitioner's guilt as to those charges. [Doc. 1 at 8.] Petitioner further asserts that he received harsher sentences for the two charges he pled guilty to because the trial court gained a better appreciation of the nature and extent of those crimes by sitting through the trial. [*Id.*] Petitioner claims his rights to procedural due process and to the effective assistance of counsel were violated.  [*Id*.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* and *Hill.* [App. 641–42.]  The PCR court found,

> Applicant has failed to meet his burden of proof in proving counsel was ineffective in this regard.  First, this Court finds Applicant's testimony to be wholly *not* credible, while conversely finding the testimonies of Sampson and Rowell to be *very* credible and persuasive.  Counsel's recommendation that Applicant plead guilty to two of the charges while proceeding to trial on the remaining four charges was an objectively reasonable, valid and well designed trial strategy. "Where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel." Whitehead v. State, 308 S.C. 119, 122, 417 S.E.2d 529, 531 (1992), *citing* Goodson v. State, 564 F.2d 1071 (4th Cir. 1977); *see also Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20 (1992), *citing* Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (1992).  As set forth by the Court above, counsel was able to credibly and clearly testify to a sound, well-designed trial strategy in advising Applicant to

19

plead guilty to two of the charges, while proceeding to trial on the remaining four charges. Applicant was advised of that strategy and, according to the credible testimony, was "on board" with it. He was fully aware of his ability to plead guilty to all six charges "straight up" with no guarantee as to sentencing, or to otherwise proceed to trial on all six charges, but opted to follow counsel's strategy knowing full well that the decision was ultimately his own to make.

Further, Applicant made the voluntary and informed decision to enter the pleas in accordance with that strategy without any coercion, hope of promise/reward, threat, or other issue that would render that decision involuntary or unintelligent. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969). In fact, the entirety of credible evidence before this Court proves Applicant was fully and adequately advised of all relevant issues and potential consequences of pleading guilty by competent counsel acting within the range of reasonableness demanded of criminal defense attorneys, and Applicant made the independent and intelligent decision to plead guilty to two of the charges in accordance with counsel's strategy. Accordingly, this Court finds no deficiency in counsel's representation of Applicant.

Additionally, Applicant has failed to prove resulting prejudice stemming from the alleged deficiency. As a preliminary note, Applicant's reliance on *Lafler v. Cooper* is misplaced. No plea offers were extended to Applicant by the state; rather, he was only offered the opportunity to plead to the charges "straight up" without any recommendations or negotiations from the state. Therefore, unlike Lafler v. Cooper, there is nothing in the record to support a finding that Applicant would have received a more beneficial sentence had he pled to all of the charges rather than proceed to trial as he did. Likewise, Applicant has failed to prove there is a "reasonable probability" that the outcome of his case and sentences imposed would have been any different had he opted to proceed to jury trial on all six charges rather than following counsel's strategy by pleading to two. Any argument to the contrary is based on pure speculation and is wholly unsupported by the record before this Court. Accordingly, this allegation is without merit and must be denied.

20

[*Id.* at 647–48.]  The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  The PCR court concluded that Petitioner failed to establish that trial counsel's representation fell below an objectively reasonable standard or any resulting prejudice. [App. 648.]

The record supports the PCR court's determination, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*.  At the PCR hearing, trial counsel testified that they advised Petitioner to plead guilty to carjacking and assault and battery with intent to kill, hoping that the jury would see that Petitioner was taking responsibility for the things he was guilty of and either find him not guilty of the remaining charges or find him guilty of a lesser-included offense.[7]  [App. 524–25, 570–71.] The PCR court found that strategy to be reasonable.  Further, Sampson testified that Petitioner understood trial counsel's strategy for having him plead guilty to some charges.

---

[7]The Court notes that, at the PCR hearing, Petitioner claimed that Owings told him if he pled to two charges, "there was no way they could convict [him] on any other charge." [App. 605:18–21.] Petitioner further testified that his answers to the trial court's questions during the guilty plea colloquy were not his own but that trial counsel told him to answer as he did. [App. 616:8–12.]  However, in its order of dismissal, the PCR court found Petitioner's "testimony to be wholly *not* credible, while conversely finding the testimonies of Sampson and Rowell to be *very* credible and persuasive."  This finding is entitled to deference.  *Cagle v. Branker,* 520 F.3d 320, 324 (4th Cir. 2008)  ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).

[App.552–53.] Both trial counsel testified that there were no plea offers from the State. [App. 523–24, 565–66.] If Petitioner wanted to plead to all of the charges, he would have to plead "straight up." [App. 566:4–13.] According to Owings, Petitioner did not want to do that. [App. 572:12–16.] The PCR court also correctly noted that there was no evidence, beyond mere speculation, that Petitioner received a harsher sentence for pleading guilty on two charges and going to trial on the remaining four. Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)). Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

### Ground Two

In Ground Two, Petitioner argues that trial counsel were ineffective for failing to object to the following portions of the solicitor's closing argument:

> (1)    "there is an old joke and it talks about a lawyer and a priest walking down the street. There is mud on one side. There is a puddle of water there and it's got this

22

much water and a priest looked down and said, look there is a silver dollar.  Get a stick and stir it up and the silt and mud rose up and mixed in.  You couldn't see it anymore.  It just went muddy . . ."  App. 405, 11. 11–18 (comments by solicitor as to defense counsel's strategy. "It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense or to otherwise denigrate defense counsel.").

(2)    If this isn't smoke and mirrors, when is it?  It's not an unusual offense.  It's called the art of confessing error.  Maybe the jury knows.  They'll just take responsibility just on a couple.  They'll feel sorry for me.  I submit, Ladies and Gentlemen, when he was trying to stab and kill that man and his wife, he was a monster.  The art of—I'll admit to the couple so the jury will feel sorry for me and won't totally respond for all my actions that day."  ("It is generally improper for the prosecution to accuse defense counsel of fabricating a defense or to otherwise denigrate defense counsel.")

[Doc. 1 at 21–21.] The Court concludes that Petitioner is not entitled to habeas relief on his Ground Two.

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*.  [App. 641–42.] In considering whether trial counsel were ineffective in failing to raise objections during closing arguments, the PCR court found it was not objectively unreasonable for trial counsel not to have objected to portions of the solicitor's closing argument,[8] noting "Counsel plainly testified she has a specific practice of not objecting to closing arguments unless the solicitor's comments reach a level of egregiousness or impropriety that threatens a defendant's right to fair trial.  None of the statements set forth above reach close to that level . . . ."  [App. 649–50.] The PCR court further found "no

---

[8] The PCR court considered more portions of the solicitor's closing arguments than those raised in the instant Petition.

23

reasonable likelihood that had counsel objected to the solicitor's remarks in closing argument, the outcome at trial would have been any different." [App. 650.] The PCR court separately noted that there was no reasonable likelihood that the outcome of trial would have been any different but-for trial counsel's alleged deficiencies in light of the overwhelming evidence of Petitioner's guilt.  [App. 651–52.]

Again, the record confirms that the PCR court's conclusions.  Sampson testified that she did not believe that the solicitor's statements during closing argument were objectionable. [App. 551:8–22.] Owings testified that she did not usually object during closing arguments, nor did she believe that she would have objected to the portions of the closing argument that Petitioner was challenging.  [App. 575–76, 594–95.]  The PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.  *Cf. Oken v. Corcoran*, 220 F.3d 259, 269–70 (4th Cir. 2000) ("[T]rial counsel was not constitutionally ineffective in failing to object to . . . certain remarks made by the prosecutors in their closing argument because it would have been futile for counsel to have done so, given the 'wide latitude' accorded counsel in making closing arguments, and given that the prosecutors' remarks, read in context, did not . . . infringe upon [the defendant's] constitutional rights.").  As such, Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petitioner be DENIED.

24

IT IS SO RECOMMENDED.


s/Jacquelyn D Austin
Jacquelyn D Austin
United States Magistrate Judge

January 20, 2016
Greenville, South Carolina